290  WILMINGTON, ETC., FRIENDS vs. NINTH STREET CO.

Syllabus:—Statement of the case.

WILMINGTON  MONTHLY  MEETING  OF  ORTHODOX  FRIENDS,

vs.

NINTH  STREET  COMPANY.

*New Castle, May* 27, 1914.

Act March 1, 1855 (11 *Del. Laws, c.* 275) §2, declaring "that no grant, conveyance, devise or lease of any real estate, dedicated or appropriated, or intended to be dedicated or appropriated, to purposes of religious worship, * * * shall vest any right, title or interest" in the person or persons to whom made, unless made to a corporation organized under *Rev. Code* 1852, amended to 1893, *p.* 309, *c.* 39, applies to grants, conveyances, devises, and leases made after the Act of real estate dedicated prior thereto as well as thereafter, and a deed of real estate held in trust for a religious society prior to the Act to new trustees after the Act, as well as a deed seeking to so dedicate real estate after the Act, passed no title.

Under Act March 1, 1855 (11 *Del. Laws, c.* 275) §1, declaring that no grant to or in trust for any person and his successors in any ecclesiastical office shall vest any estate in him or his successor, and that no grant to or for any such person by the designation of his office shall vest any estate in his successor; section 2, declaring that no grant of real estate dedicated or to be dedicated to religious worship shall pass any title, unless made to a corporation organized under *Rev. Code* 1852, amended to 1893, *p.* 310, *c.* 39, §3, declaring that any real estate within section 2, which has been heretofore granted "to any person or persons in any ecclesiastical office by the designation of such office or otherwise" shall be held in trust for the society, and upon the death of the title holder vest in the society, provided it is then a corporation; section 4, declaring that if it is not so incorporated the title shall escheat to the State; and section 5, declaring that the Secretary of State shall convey it to the society, whenever it shall become incorporated—the quoted portion of section 3 relates to three classes of persons to whom real estate has been granted, and includes grants to laymen as trustees, as well as ecclesiastical officers, so that upon the death of the laymen trustees of an unincorporated society the title escheated to the State, and was returned by a grant from the Secretary of State upon its incorporation.

BILL FOR SPECIFIC PERFORMANCE.  The bill is for specific performance of a contract for the purchase by the defendant of

a tract of land from the complainant, situated at the northeast corner of Ninth and Tatnall streets, in the City of Wilmington. The land was apparently acquired in several parcels, and the defendant objects to the title of the complainant to part only of the land, though it claims that by reason thereof it should not be required to take the title to any of the land. By four deeds four separate parcels of land were conveyed prior to March 1, 1855, to James Canby and two other persons, and the survivor or survivors of them, as trustees,

" * * * in trust for the Wilmington Monthly Meeting of Friends as a place for holding their religious meetings and to build upon, improve and make use of for any uses or purposes which the said Monthly Meeting in that capacity should, from time to time, see fitting to order and direct, and upon this further trust that whenever they, the said Ashton Richardson, James Canby and Edward Tatnall, shall by death, removal or disownment become reduced in number or it shall from any cause whatever be deemed expedient by the said Wilmington Monthly Meeting of Friends to change the trustees of the estate and premises thereby granted and conveyed, then the survivors or survivor, as the case may be, of the said trustees above named should, on the receipt of an order to that effect in writing signed by the clerk of the said Monthly Meeting, convey and assure the said land and premises above mentioned and particularly described with the appurtenances unto such person or persons as the said Monthly Meeting should appoint for that purpose, to hold the same to and for the uses and purposes aforesaid; and also upon this further trust that if at any time or times hereafter the said Monthly Meeting should see fit and conclude to sell and dispose of the said lot of land, or any part or parts thereof, then in such case and upon receipt of a written order to that effect, signed by the clerk of said Monthly Meeting for the time being, they, the said Ashton Richardson, James Canby and Edward Tatnall, or the survivors or survivor of them, or the heirs of such survivor, are hereby authorized and required to grant, convey and assure the said lot or piece of land or part or parts thereof, with the appurtenances, and the absolute fee simple inheritance thereof, to the purchaser or purchasers of the same, his, her or their heirs and assigns forever."

In 1856 James Canby, being then the sole surviving trustee, granted and conveyed the four tracts of land by direction of the Wilmington Monthly Meeting of Friends, pursuant to the terms of said trust, unto three other persons, subject to the same trusts. In 1867, Henry F. Dure sold and conveyed another lot to the persons who held title to the other four lots in

trust under the same terms.   By several similar conveyances the title to all five lots was apparently passed on with the same trusts until 1913.   In that year the religious society was incorporated under the then existing law relating to religious corporations, being the Act of 1911 (*Chapter* 89, *Volume* 26, *Laws of Delaware*).   This Act was substantially a re-enactment of *Chapter* 39 *of the Revised Code*, with one important omission and some unimportant additions.   After this incorporation a deed was made by the trustees then holding the legal title conveying to the corporation without any trusts all five of the lots as one tract.   Objection is made by the purchaser to the title to the land acquired before the passage of a certain Act of the General Assembly on March 1, 1855 (*Chapter* 275, *Volume* 11, *Laws of Delaware*), which Act applies to all the land referred to in the contract, except the small lot acquired from Henry F. Dure in 1867, as above stated.

The Act of March 1, 1855, entitled "An Act in relation to conveyances and devises of personal and real estate for religious purposes" (*Chapter* 275, *Volume* 11, *Laws of Delaware*), is as follows:

"*Section* 1.   That no grant, conveyance, devise or lease of personal or real estate to, nor any trust of such personal or real estate for the benefit of any person, and his successor or successors in any ecclesiastical office, shall vest any estate or interest in said person or his successor; and no such grant, conveyance, demise, or lease to or for any such person by the designation of any such office, shall vest any estate or interest in any successor of such person.   But this section shall not be deemed to admit the validity of any such grant, conveyance, devise or lease heretofore made.

"*Sec.* 2.   That no grant, conveyance, devise or lease of any real estate, dedicated or appropriated, or intended to be dedicated or appropriated, to purposes of religious worship for the use of any congregation or society shall vest any right, title or interest in any person or persons to whom such grant, conveyance, devise or lease be made unless such grant, conveyance, devise or lease be made both in form and in fact, to a corporation organized according to the provisions of the laws of this State, as contained and provided in, and by, the 39th chapter of the *Revised Code*, under the title of 'Religious Societies.'

"*Sec.* 3.   That any real estate of the description named in second section of this Act, and which has been heretofore granted, devised or demised, to any person or persons in any ecclesiastical office by the desig-

nation of such office or otherwise, shall be deemed to be held in trust for the benefit of the congregation or society using the same, and shall upon the death of the person or persons in whom the title shall be vested at the time of the passage of this Act, vest in the religious corporation formed by the congregation or religious society occupying and enjoying such real estate as aforesaid. *Provided* such corporation organized according to the laws of this State shall be in existence at the time of the decease of the person or persons holding the title thereto.

"*Sec.* 4. That in the event such corporation or society shall not be incorporated as aforesaid, then, and in that case, the title of such real estate shall escheat to the State of Delaware, in the same manner and with the same effect as if the person holding the title thereto had died intestate and without heirs capable of inheriting such real estate.

"*Sec.* 5. That whenever title to any real estate shall escheat to the State of Delaware under and by virtue of the last preceding section, it shall be the duty of the Secretary of State, and he is hereby authorized, upon his being satisfied of the due incorporation of the congregation or society who have occupied and enjoyed such real estate for the purpose of religious worship, under and according to the provisions of the law first named in the second section of this Act, and a further production to him of a certified copy of the recorded certificate of the incorporation, under the hand and seal of the Recorder of the county in whose office the same is recorded,-to grant and convey such real estate and all the right, title and interest of the State of Delaware therein and thereto to said corporation, which shall thereupon be vested with all the right, title and interest which became vested in the State by virtue of the provisions of this Act."

*Chapter 39 of the Revised Code,* referred to in the second section was enacted prior to 1855, and was a very old statute, part of it being in existence as a statute of Delaware since 1787. In brief, it provided a simple method for incorporating religious societies and congregations of Christian people; transferred to the corporation the title to land held for the use of such society or congregation; invalidated grants of land to such religious corporations, except by deed made and recorded more than a year prior to the death of the grantor or for a valuable consideration; and by section 11 limited the income which such corporations could have from its property. Section 11 was repealed in 1909 and had not been re-enacted in 1911.

For convenience the land mentioned in the contract is considered in two divisions, lot A being all but the Dure land and

lot B being the Dure land. To meet an objection or contention that because of the prohibition of *Section* 2 of the Act of 1855, the deed made by James Canby, who then solely held the title to lot A, and the deed made by Henry F. Dure, who then owned lot B, did not convey the legal title to the parcels of land therein described, and the contention that the land therefore descended to their respective heirs at law or devisees, a deed had been obtained by the complainant from James Canby, the eldest male heir at law of James Canby, the elder, for lot A, and also a deed from the heirs at law and devisees of Henry F. Dure for lot B. . As a further precaution, a deed was obtained for both lots A and B from the Secretary of State under the provisions of *Section* 5 of the Act of 1855. It is claimed, then, by the complainant that under one or the other of the three methods, or by all three combined, the complainant acquired and can convey a good title in fee simple to the whole land.

The facts above stated were established by testimony heard orally before the Chancellor, and by exhibits and records proved, including the identity of the society or congregation as being the religious congregation or society using, occupying and enjoying the land, and also including the establishment of the kinship of those who as heirs at law of James Canby, the elder, and Henry F. Dure, respectively, made conveyances to the complainant of parts of the land in question.

Another Act referred to in the argument was the one approved March 14, 1911 (*Chapter* 89, *Volume* 26, *Laws of Delaware*), which was substantially a re-enactment of *Chapter* 39 *of the Revised Code*, relating to the incorporation of religious societies. *Section* 4 of the old Act was reproduced in the new Act as *Section* 5, and is as follows:

"All the estate, right and title which any such society, or congregation, may have in any property, real or personal in themselves, or by trustees, or for their use before incorporation, shall upon incorporation, become vested in the said corporation, which may grant, demise or dispose thereof."

The case was heard on bill, answer, testimony and exhibits.

*William S. Hilles*, for the complainant.

*Christopher L. Ward* and *Robert H. Richards*, for the defendant.

THE CHANCELLOR.   The bill is for specific performance of a contract for the sale by the complainant to the defendant of a lot of land therein described, and the defense is based on the invalidity of the complainant's title to all but a very small part of the tract.   Obviously the defendant cannot be compelled to accept a deed for a tract of land if the title to all but a very small part thereof is not good.   There is no dispute as to the facts.   Part of the land (which will be called lot A) was acquired before the Act of March 1, 1855, and the rest (which will be called lot B) was acquired thereafter.   The trusts relating to the two tracts are the same and the beneficiary is the same, viz., the Wilmington Monthly Meeting of Friends, or, as the society was called in the incorporation thereof in 1913, the Wilmington Monthly Meeting of Orthodox Friends.

The trusts concerning all the land were valid, and were not within any prohibition of any statute of the State of Delaware.   *Doughten v. Vandever*, 5 *Del. Ch.* 51.   The beneficiaries of the trust were the members of the society from time to time, and all the intermediate conveyances, as well as the conveyance tendered to the defendant, conformed to these trusts.

The title to lot A and lot B will be considered separately.

Lot A.   In 1856, James Canby, the elder, admittedly held the legal title to the portion of the land designated as lot A, as sole surviving trustee under certain trusts for the religious Society of Friends.   During that year he undertook by deed to convey the land to three new trustees properly appointed pursuant to the terms of the trust, and his grantees did likewise, and so on to the complainant in 1913.   Before 1855 there was a simple proceeding for the incorporation of religious societies, and grants and gifts of real estate to religious corporations were invalid, except by deed made at least one year before the death of the grantor, and religious corporations were limited in the amount of income they could have from the real and personal property owned by them.   These restrictions are called the

"mortmain provisions". But gifts and grants of land might be made to trustees in trust for such corporations even by deed made less than a year before the death of the grantor. So, also, conveyances could be made to persons holding ecclesiastical offices and their successors in office. In these and perhaps other ways the mortmain provisions above referred to might be, and perhaps were, avoided and circumvented, intentionally or otherwise. Then came the Act of March 1, 1855

The journals of the General Assembly do not disclose legislative purpose, and there is no assisting preamble. Nor has attention been called to any contemporary public discussion or evidence of public opinion respecting the subject-matter of that legislation. For the interpretation of its dubious provisions the act itself is the chief and perhaps the only guide, and there are no decisions of other courts that are helpful.

By section 1 it was enacted that a transfer of property to or in trust for any person and his successor in any ecclesiastical office should vest no estate in such person, or his successor; and no such grants to or for such person by designation of his office should vest any estate in any successor of such person. By this section, by way of illustration, a grant to or in trust for "A. B. and his successors as bishop of Delaware," or to or "in trust for the bishop of Delaware," were affected. In the first case the beneficiary named and his successor took nothing, and in the latter case the successor took nothing.

By section 2, all grants of real estate dedicated for religious worship must be made to a corporation incorporated under *Chapter* 39 *of the Revised Code*, and a grant made for such purposes to any person would vest no title in the grantee.

Section 3 provides that real estate dedicated for religious worship and which had theretofore been transferred to any person "in any ecclesiastical office by the designation of such office or otherwise" should be deemed to be held in trust for the society using the same, and upon the death of the person holding the legal title, the property should vest in the society if then incorporated. If there were then no such corporation, then in such cases, by section 4, the land escheated to the State,

and by section 5 a convenient way was provided to pass over the title to the corporation when created.

It is probably correct to say that the purpose of the Act was to encourage and perhaps enforce the incorporation of religious societies, in order that property held for or used by such societies should be held by the corporation and not by any ecclesiastical officer or by lay trustees. This may have been done either to protect the titles to land, or to bring such property within the mortmain restrictions imposed on such corporations, or both purposes may have existed.

In *Willin, et al., Trustees, v. Wright,* 2 *Boyce* 197, 78 *Atl.* 773 (1911), the court considered that the purpose was to "make conveyances of land for religious purposes to a person or ecclesiastical office impossible and to prevent a conveyance by indirection or the medium of a trust in violation of the spirit of said section 10." The section referred to is *Section* 10 of *Chapter* 39 *of the Revised Code,* and it invalidated unpurchased transfers of land to religious corporations unless made by deed more than a year before the death of the grantor. Except for the matter above quoted, that decision is not helpful in the case under consideration.

Two divergent views as to the purpose of the Act of 1855 were urged by counsel for the parties. For the defendant it was urged that the Act was a perpetuation in comparatively modern times of the ancient struggles between the Church and State in England concerning the holding of property by the Church, and that it should be construed with that in view. His contention is that the deed of James Canby was ineffective as within the prohibition of section 2, so that James Canby at his death in 1858 held the legal title, and that section 3 did not apply to a case where land had been conveyed to laymen in trust for a religious society. The result claimed was that the land did not escheat to the State, and though the deed of the heirs at law of James Canby may have passed the legal title, the real equitable interest was in those persons who in 1855 were the members of the Wilmington Monthly Meeting of Friends as individuals, and their heirs and devisees, and not in the corporation, or in the society, as a collective body.

According to this contention, no provision was made in the Act of 1855 to preserve the land for the Society as a collective body on the death of a sole surviving lay trustee then holding title.

For the complainant it was said that section 2 may not apply to land which had theretofore been conveyed to laymen in trust for a religious society, but only to such land as should thereafter have been so conveyed. If so, then the deed of James Canby to his successors as trustees and the other mesne conveyances down to that made to the complainant were valid and effective. An alternative contention was that if section 2 invalidated the conveyance by James Canby to the new trustees in 1856, the equitable interest was still in the Society as a collective body, and upon the incorporation thereof in 1913 that interest was vested in the corporation under section 5 of the Act of 1911, and by the deed of the heirs at law of James Canby the legal title vested as well. Another alternative proposition was that if by section 2 the deed by James Canby in 1856 was invalid, then that section 3 applied to land dedicated to public worship by a religious society, whether held by trustees or granted to a person in an ecclesiastical office, and so applied to the land in question, and under sections 3, 4 and 5, at the death of James Canby in 1858, there being then no incorporation of the Society, the land escheated to the State and by the deed of the Secretary of State passed to the complainant. Undoubtedly there are difficulties in adopting either of these different views, owing to the ambiguity of the language used.

It is clear, as has been said above, that the Act of 1855 was passed to encourage and perhaps enforce the holding of the title to land used for religious purposes by corporations organized under the then existing law, and to prevent the acquisition of unpurchased land for such purposes otherwise than by deed made more than a year before the death of the grantor and with limitations as to the amount of the yearly rents derivable therefrom. The then existing legislation on the subject was *Chapter 39 of the Revised Code.* It is also evident that the Act of 1855 not only did not aim to take from the religious

societies any beneficial interest which they had in the land at the time the Act was passed, but it expressly preserved such rights.

Section 2, as well as section 1, relates to future events. Conveyances of real estate dedicated, or to be dedicated, for religious worship for any society must thereafter be made to a corporation created under *Chapter* 39, and if made otherwise would vest no title in the grantees. This relates to future conveyances. But it in terms surely relates also to land which before the passage of the Act had been dedicated or appropriated to religious worship for a society, as well as lands to be thereafter so dedicated or appropriated. It, therefore, distinctly applies to and affects any conveyance of the greater part of the land in question, for it had theretofore been acquired by the Monthly Meeting of Friends for such purpose. James Canby under this section could not convey it to the new trustees, or any other person, or otherwise than to a corporation of this Monthly Meeting created under *Chapter* 39. There was no such corporation until 1913. Therefore, no title passed under the deed which James Canby made in 1856.

Section 3, and indeed the whole Act, is not clearly phrased, and much ambiguity exists as to the meaning thereof. By a hard, strict and unyielding interpretation of the words used, the section is capable of being so construed as not to refer to, or include in its operations, land held as James Canby held the land in question, and to relate only to land held by an ecclesiastical officer, which Canby, as trustee, surely was not. This is the contention of the defendant, who urges that it applies only to conveyances theretofore made to an ecclesiastical officer by the designation of his office, and certainly does not include grants to laymen as trustees for an unincorporated religious society. If this be true, then in 1858 on the death of James Canby (whose conveyance in 1856 was ineffectual under section 2) the title did not escheat to the State and did not pass to the complainant by the deed of the Secretary of State. The consequences of so holding were bewildering even to the solicitor for the defendant, who made what was even to him a very unsatisfactory explanation as to the devolution of the beneficial title

on the death of James Canby. It leaves the question in a hopelessly confused and incomplete condition.

The most reasonable view of section 3, and the one adopted, is this: Section 3 relates to all land dedicated or appropriated, or intended to be dedicated or appropriated, to purposes of religious worship for the use of any congregation or society, whether the dedication or appropriation be made to laymen as trustees in trust for the society, or whether it be transferred to any person in any ecclesiastical office by the designation of such office or otherwise. It was intended to apply to matters referred to in section 1 and section 2. This is obviously the purpose of the Act. It was not to pull down, confuse or invalidate rights in land, but to secure them for the use of the religious society or congregation, and also subject the land to certain existing restrictions. This purpose was effected by treating the Act in one or the other of several ways, and so far as the particular case in hand is concerned it is unimportant which one of several inconsistent views is correct, so long as the title is considered good. Three interpretations of this section are urged:

(1) The complainant urges that the word "or" be substituted for the word "and" where it first occurs in the section, so that it would read thus:

"That any real estate of the description named in the second section of this Act, *or* which has been heretofore granted," etc.

There is authority for such substitution in some cases in construing laws in deference to the meaning of the context, the popular use of the words "or" and "and" being so loose and frequently inaccurate. 2 *Lewis on Statutory Construction*, §397. This is plausible and perhaps correct, but is not as satisfactory an interpretation as another to be hereafter considered.

(2) The insertion of the words "also real estate" after the word "and" where first used would be in harmony with the general purpose of the Act, and would make the section apply to real estate held by laymen in trust for religious bodies as well as land held by ecclesiastical officers. The section would read:

"That any real estate dedicated," etc., "and *also real estate* which has been heretofore granted," etc., "to any ecclesiastical officer," etc.

This is open to objection, as is the prior suggestion, in that it changes the verbiage of the Act.

(3) By the use of the words "or otherwise," the section applies to real estate transferred to persons other than ecclesiastical officers for the use of a religious society, and makes the section apply to the matters referred to in section 1 and section 2 of the Act. The section makes three classes of persons when read thus:

"That any real estate dedicated or appropriated, or intended to be dedicated or appropriated, to purposes of religious worship for the use of any congregation or society, and which has been heretofore granted, devised or demised to any person or persons (1) in any ecclesiastical office (2) by the designation of such office (3) or otherwise, shall be deemed to be held in trust for the benefit of the congregation or society using the same," etc.

Section 1 of the Act mentions transfers (1) to or for any person in any ecclesiastical office and (2) to or for any person by the designation of any ecclesiastical office, and section 3 includes both of these as shown above. The words "or otherwise" must refer to something else than ecclesiastical officers or ecclesiastical offices. Naturally, it relates to transfers to laymen for the benefit of the society. This view of the Act is consistent with the general purpose of the Act, and its adoption does not involve the substitution or addition of words. For these reasons it seems correct, and is adopted in interpreting the section.

The result would be that by section 2 no title to lot A vested in the new trustees as grantees of the deed made in 1856 by James Canby, but he continued to hold the same until his death in 1858, and as at that time the religious society using, occupying and enjoying the real estate was then unincorporated, the title escheated to the State of Delaware under section 4, and by the deed of the Secretary of State vested in the complainant by virtue of section 5 of the Act.

Lot B.   The deed from Dure to trustees for the Society being made subsequent to 1855 was clearly within the prohibition of section 2 of the Act of that year, and no right, title or interest vested in the persons the grantees therein, but remained in the grantor, and on his death passed under his will.   Upon the incorporation of the Society in 1913 the legal and equitable title thereto either passed under section 5 of the Act of 1911, or was conveyed by the deed to the corporation from the heirs and devisees of Dure.   It is conceded by the solicitor for the defendant that a good title to this relatively small part of the land was conveyed by the deed from the devisees of Dure.

In view of the conclusions stated above, and because of the facts of this case, it is not necessary in this case to consider the bearing and effect on either branch of the title of section 5 of the Act of March 14, 1911 (*Chapter* 89, *Volume* 26).   This Act was substantially a re-enactment of the very old statute constituting *Chapter* 39 *of the Revised Code;* but being enacted subsequent to the Act of 1855, with its stringent and radical provisions, it may have an important bearing, and perhaps a controlling influence, on titles to land granted, devised and demised to or for religious societies before and perhaps after 1855.   Its provisions were not relied on by the complainant, or much discussed, by him and not at all by the solicitor for the defendant.   The need to invoke the benefit of the Act to obtain the legal title did not here arise, because there were actual conveyances of both branches of the title made to the complainant as a corporation by the holders of the legal title under James Canby or Henry F. Dure, or by the Secretary of State.

The conclusion reached as to the effect of the Act of March 1, 1855, on title to land for religious societies are these: (1) Section 2 of that Act applies to grants, conveyances, devises and leases made after the passage of the Act of real estate dedicated prior to the passage thereof to religious worship. (2) Section 3 applies to such real estate so granted, conveyed, devised or leased before the passage of that Act, whether the transfer be made to an ecclesiastical officer, or to laymen as trustees for the congregation or society, or otherwise.

Transfers made to a person after 1855 of real estate theretofore or thereafter dedicated or appropriated to purposes of public worship for the use of any congregation or society were made ineffective to vest any title in the person to whom the transfer was made, but all such were valid if made to a religious corporation created under the particular law relating to such corporations. But the beneficial use of real estate which before the Act was passed had been so dedicated and appropriated, was preserved for the society or congregation until it became incorporated. This applied to real estate whether it had been theretofore transferred to a person in an ecclesiastical office, or to a person by the designation of such office, or to laymen or trustees, or otherwise. In all such cases the persons holding the title transferred to them prior to 1855 could thereafter transfer it only to a religious corporation so incorporated, but during their lives held it in trust for the congregation or society using it. If no such transfer be made in the lifetime of the transferee the property at the death of the transferee would vest in the religious corporation, if there be one, and if not, then it escheats to the State. If the congregation occupying and enjoying the property afterwards becomes incorporated, the Secretary of State could convey the property to the corporation, which will thereupon be vested with the title to the property.

The complainant is entitled to a decree for specific performance of the contract.*

*NOTE.—On appeal the decree was affirmed by the Supreme Court. See *post p.* 479.